**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

DONALD J. LOWE,

Plaintiff,

v.

HUNG CAO,[1]
*Secretary of the Navy*,

Defendant.

Case No. 2:24-cv-681

## OPINION & ORDER

Plaintiff Donald J. Lowe, appearing pro se, filed this action against the Secretary of the Navy, alleging religious discrimination, hostile work environment, retaliation, disability discrimination, and genetic information discrimination claims related to the Navy's COVID-19 policies. ECF No. 21. The Secretary moved to dismiss the third amended complaint for failure to state a claim. ECF Nos. 22 (motion), 23 (memorandum). For the reasons set forth below, the Secretary's motion will be granted, and this case will be dismissed.[2]

[1] Hung Cao is now the Secretary of the Navy and is automatically substituted as a party pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The Court has considered the arguments in the briefing and concludes there is no need to hold a hearing on the motion. *See* Fed. R. Civ. P. 78; E.D. Va. Loc. Civ. R. 7(J).

## I. BACKGROUND

At this stage, the Court assumes that the facts alleged in the third amended complaint are true. The plaintiff was employed at the Navy Reserve Force Command from September 2018 to April 2023. ECF No. 21 ¶ 8. In September 2021, President Joseph R. Biden, Jr. issued Executive Order 14043, which required federal employees to be vaccinated against COVID-19. *Id.* ¶ 1. The plaintiff opposed the executive order, submitting complaints regarding its legality and questioning it in a work meeting. *Id.* ¶ 2. He was asked to refrain from discussing his position during these meetings but was informed that he had the right to object to policies he felt were unlawful. *Id.*

In November 2021, the Navy implemented a plan for enforcing the executive order. ECF No. 21 ¶¶ 1, 17; ECF No. 1-4 at 1–9 (Navy's COVID-19 policy).[3] As part of this plan, the Navy required that employees be vaccinated against COVID-19, ECF No. 21 ¶ 11; classified employees based on their vaccination status, *id.* ¶ 21; mandated that unvaccinated employees take weekly COVID-19 antigen tests, *id.* ¶ 25; and allowed commands to prohibit unvaccinated employees who refused to submit to testing from entering their worksites, *id.*

[3] The plaintiff references several exhibits that were attached to his original complaint, including a copy of the Navy's COVID-19 policy, but does not attach the exhibits to the operative pleading. *See, e.g.*, ECF No. 21 ¶ 17. The Court "may . . . consider certain exhibits attached to the original complaint that are integral to and explicitly relied on the [amended] complaint and whose authenticity is not challenged." *Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr., Inc.*, 7 Fed. App'x 197, 202 (4th Cir. 2001) (unpublished) (citation and quotation marks omitted). Because the plaintiff's third amended complaint refers to exhibits that are integral to the claims therein, and the Secretary does not contend the exhibits are inauthentic, the Court will consider the exhibits regardless of where they were filed.

After the executive order was issued, the plaintiff informed his first-level supervisor that he would seek a medical accommodation because of his congenital heart defect. ECF No. 21 ¶ 10. The plaintiff eventually requested a religious accommodation instead, on November 8, 2021, but was not provided one. *Id.* ¶¶ 13–14; *see also* ECF 1-3 at 10–12 (plaintiff's religious accommodation request). Shortly after this request, the Navy changed the plaintiff's job position, and he was told to report to a new supervisor who used to be his peer. ECF No. 21 ¶ 18.

The plaintiff declined to be vaccinated against COVID-19 and refused weekly COVID-19 testing. ECF No. 21 ¶ 26. As a result, the plaintiff was not allowed to enter his workplace and began working remotely on December 8, 2021. *Id.* ¶ 27; *see id.* ¶ 28. While the plaintiff was working remotely, he agreed to allow another employee to temporarily use his workspace. *Id.* ¶¶ 28–29. That employee rearranged the plaintiff's belongings and put up their own personal items in the workspace. *Id.* ¶ 31. When the plaintiff returned to working in person on March 7, 2022, his workspace had not been restored to its original condition. *Id.* ¶ 37.

Several COVID-19 safety measures remained in place when the plaintiff returned to working in person. ECF No. 21 ¶ 38. Some—like requiring six feet of social distancing, restricting business travel, limiting access to meetings, and asking employees to wear masks while inside—applied only to unvaccinated or partially vaccinated employees. *Id.* ¶¶ 38–39. Even after the Executive Order requiring

vaccination was enjoined in January 2022, the Secretary continued to enforce the Navy's COVID-19 policy, including by requiring antigen testing. *Id.* ¶¶ 32–33.[4]

Shortly after he resumed working in person, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on March 25, 2022, alleging that he had been subjected to religious discrimination, genetic information discrimination, and retaliation. ECF No. 21 ¶ 41; ECF No. 1-2 at 7–12 (Charge No. 22-00072-0067). The charge also alleged that the plaintiff had not received a response to his accommodation request for four months. *See* ECF No. 1-2 at 9. The EEOC issued a notice of right to sue on August 22, 2022. ECF No. 1-1 at 18.

The plaintiff filed his third amended complaint in this Court on January 7, 2026. ECF No. 21. It alleges eight counts: disability discrimination in violation of the Americans with Disabilities Act (ADA) (Count I), religious discrimination under Title VII of the Civil Rights Act of 1964 (Count II), genetic discrimination in violation of the Genetic Information Nondiscrimination Act (GINA) (Count III), Title VII hostile work environment claims (Counts IV–VII), and violations of his Fifth Amendment rights pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (Count VIII). *Id.* ¶¶ 52–92.

[4] The plaintiff appears to suggest that because the executive order was enjoined, the Navy should not have continued to require vaccination. *See* ECF No. 21 ¶ 1. However, the executive order did not address COVID-19 testing, which the plaintiff also opposes. Therefore, whether the Navy implemented its vaccine requirement after the January 2022 injunction does not resolve all of the plaintiff's claims.

## II. LEGAL STANDARD

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true," *Twombly*, 550 U.S. at 555, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court must liberally construe complaints filed by pro se litigants; however, the Court "cannot act as a pro se litigant's advocate and develop, *sua sponte*, . . . claims that the litigant failed to clearly raise on the face of the complaint.'" *Bolton v. Chesterfield Cnty. Sch. Bd.*, No. 3:19-cv-558, 2020 WL 5750896, at *2 (E.D. Va. Sept. 25, 2020) (cleaned up); *see Jackson v. Wilhelm Rest. Grp., Inc.*, No. 1:22-cv-165, 2022 WL 982361, at *2 (E.D. Va. Mar. 30, 2022) (explaining that a court's requirement to liberally construe a pro se complaint does not "transform[] the court into [the pro se plaintiff's] advocate" (citation omitted)).

## III. ANALYSIS

### A. ADA (Count I)

The plaintiff originally attempted to bring a claim under the ADA, which prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *see* ECF No. 21 ¶¶ 52–55. However, "[s]overeign immunity has not been abrogated for . . . ADA Title I claims," so the plaintiff's ADA claim as originally filed must be dismissed. *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014).

While the plaintiff concedes that his ADA claim is barred because of sovereign immunity, he requests that the Court construe his disability claim to be brought under the Rehabilitation Act. *See* ECF No. 26 at 10–11. The Rehabilitation Act provides a cause of action against federal employers for disability discrimination, 29 U.S.C. §§ 701–797, with "generally the same" scope of liability as the ADA. *Wood v. Md. Dep't of Transp.*, 732 Fed. App'x 177, 181 (4th Cir. 2018) (unpublished). In light of the plaintiff's pro se status, the Court will construe the plaintiff's disability claim as being brought under the Rehabilitation Act. However, it still must be dismissed.

The Rehabilitation Act requires claimants to exhaust their administrative remedies prior to filing a lawsuit. *Winey v. Mattis*, 712 Fed. App'x 284, 284 (4th Cir. 2018) (unpublished). The exhaustion requirement is designed to ensure that the employer is placed on notice of the alleged violations. *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (citation omitted). If the claims made in the plaintiff's complaint are reasonably related to the claims contained in the EEOC charge such that they

would be learned of through a "reasonable administrative investigation," the plaintiff has satisfied the exhaustion requirement. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000).

The plaintiff concedes that his EEOC charge did not check the "disability" box. ECF No. 26 at 11. But he argues that both the charge and the administrative decision "expressly reference" his request for a vaccine exemption, and the EEOC described the administrative issues as including whether the agency failed to respond to that request. *Id.* However, the EEOC charge contains no information that would put the agency on notice of the plaintiff's *disability* discrimination claims. Instead, it indicates only that the plaintiff requested a religious exemption to the vaccine requirement, and it never even mentions that the plaintiff *has* a disability. ECF No. 1-2 at 9–10. The investigative file reflects the same. *Id.* at 77–80. Thus, the plaintiff did not exhaust his administrative remedies as to a Rehabilitation Act claim before filing this lawsuit, so Count I will be dismissed.

**B. Religious Discrimination Under Title VII (Count II)**

The plaintiff alleges that the Secretary lowered his job position because of his religious beliefs and that his request for a reasonable accommodation for his religious beliefs was denied. ECF No. 21 ¶¶ 56–60. The Secretary, meanwhile, argues that the plaintiff has not pleaded religious beliefs that prevent him from complying with the Navy's COVID-19 policy in its entirety, and that no adverse employment actions were taken against him. *See* ECF No. 23 at 13–17. Because the plaintiff failed to allege

religious beliefs that prevent him from complying with the Navy's COVID-19 policy, this claim will be dismissed.

Title VII prohibits employers from "discharg[ing] any individual, or otherwise discriminat[ing] against any individual . . . because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1). It also prohibits an employer from limiting, segregating, or classifying employees based on religion in a manner that would "deprive . . . any individual of employment opportunities or otherwise adversely affect [their] status as an employee." § 2000e-2(a)(2). Religion includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [they are] unable to reasonably accommodate . . . without undue hardship on the conduct of the employer's business." § 2000e(j).

A plaintiff can bring a religious discrimination claim under Title VII based on an employer's failure to accommodate their religious observances, practices, or beliefs, or for facing disparate treatment because of them. *See Hall v. Sheppard Pratt Health Sys., Inc.*, 155 F.4th 747, 751 (4th Cir. 2025). However, Title VII protects only religious beliefs that are (1) "sincerely held" and (2) "religious in nature." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 470 (4th Cir. 2025); *see United States v. Seeger*, 380 U.S. 163, 185 (1965). Whether a belief is "religious in nature" considers if it is, "in the claimant's own scheme of things, religious" and an "essential part of a

religious faith." *Seeger*, 380 U.S. at 185. And it must be "plausibly connected" to the accommodation being sought. *Barnett*, 125 F.4th at 471.

The Court liberally construes the plaintiff's complaint in light of his pro se status. *See Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025). Therefore, it interprets the third amended complaint as bringing a claim for religious discrimination under Title VII both on the theory that the plaintiff failed to receive a reasonable accommodation for his refusal to be vaccinated or tested, *see* ECF No. 21 ¶ 57, and because he experienced disparate treatment based on his religion after he requested an accommodation, *see id.* at 26–27, 33–34. However, the plaintiff has not alleged facts sufficient to support a Title VII claim on either basis.

#### ***i. COVID-19 Vaccination and Testing***

The plaintiff objects to two primary measures of the Navy's COVID-19 policy: He declined to receive the COVID-19 vaccine and also declined weekly COVID-19 antigen tests. ECF No. 21 ¶¶ 21, 26. The plaintiff alleges multiple reasons for opposing the COVID-19 vaccine, including his opposition to abortion and his beliefs that aborted fetal tissue was used to develop the COVID-19 vaccine; that receiving the vaccine would effectively condone abortion; and that any mandate that would cause him to alter his body is immoral and violates his belief that God gave humans free will. *Id.* ¶ 3.

The Court assumes without deciding that the plaintiff has sufficiently alleged beliefs regarding the COVID-19 vaccine that are sincerely held and religious in

nature.[5] *See Barnett*, 125 F.4th at 470–71*; see also Finn v. Humane Soc'y of the U.S.*, 160 F.4th 92, 99 (4th Cir. 2025) (plaintiff's religious beliefs plausibly connected to her refusal to be vaccinated).

However, the policy here required either that an individual be vaccinated *or* that they self-administer weekly COVID-19 antigen tests and adhere to other requirements. ECF No. 1-1 at 5; *see* ECF No. 21 ¶ 25. So, for his claim to survive, the plaintiff must *also* allege sincerely held religious beliefs with respect to his refusal to take weekly COVID-19 antigen tests. But the plaintiff does not allege a plausible relationship between his objection to COVID-19 testing measures and any sincerely held religious beliefs.

While the plaintiff raises several objections to testing, none appear "religious in nature." *Barnett*, 125 F.4th at 470. He alleges that he refused testing due to "legal, moral, and safety concerns." ECF No. 21 ¶ 26. The plaintiff likewise alleges that the tests pose risks to his nervous system and may increase his cancer risk, and that chemicals in the testing kit may cause exposure-related issues. ECF No. 1-5 at 32. He also objects to the efficacy of the Navy's testing policy and its sampling strategy. *Id.*

[5] Neither party challenges the plaintiff's sincerity with respect to his opposition to the COVID-19 vaccine, and "the inquiry into sincerity is almost exclusively a credibility assessment and can rarely be determined on summary judgment, let alone a motion to dismiss." *Barnett*, 125 F.4th at 470 (citation and quotation marks omitted).

at 33. He also alleges that the tests are "unnecessarily invasive" and objects to having "any foreign object penetrate any of [his] orifices." *Id.*

Unlike the plaintiff's statements regarding the COVID-19 vaccine, these allegations do not plausibly allege that his opposition to COVID-19 antigen testing was based on his religious beliefs. To be sure, the plaintiff need not specifically detail "*how* any particular tenet or principle of [his] religion" prohibits testing. *Finn*, 160 F.4th at 99 (citation omitted and emphasis added). But he must allege some plausible connection between his refusal to submit to testing and his sincerely held *religious* beliefs, not "solely . . . health or safety concerns." *Id.* at 98; *see also Jackson v. Methodist Health Servs. Corp.*, 121 F.4th 1122, 1126 (7th Cir. 2024) (plaintiff did not state a claim under Title VII when they "cite[d] no religious tenet that is at odds with the testing requirement and no religious practice with which testing would interfere"). Even when construed liberally, the plaintiff's objections to testing do not sufficiently allege a basis in religious belief that warrants Title VII protection.[6]

Because the plaintiff does not allege that his refusal to comply with the Navy's COVID-19 testing requirement was derived from a sincerely held religious belief, he

---

[6] Construing the plaintiff's complaint liberally, the plaintiff's objection to "unnecessarily invasive" testing and the insertion of foreign objects into his body sometimes qualifies as religious belief. ECF No. 1-5 at 33. But even that requires additional context. *See, e.g.*, *Chinnery v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, No. 24-1697, 2025 WL 1733959, at *2 (4th Cir. June 23, 2025) (unpublished) (requiring district court to reassess dismissal of Title VII claim regarding COVID-19 testing where plaintiff alleged that her "sincerely[] held Christian beliefs" did not allow "a foreign body [to be] inserted into [her] nasal passages . . . as [her] body is the temple of the Holy Spirit and is to remain pure"). But when reviewing a pro se complaint, the Court can only "help identify potentially viable *legal claims* that the plaintiff may not have raised[,]" not allege new facts.

does not state a claim for religious discrimination under Title VII for any failure of the Secretary to provide an accommodation. *See EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (requiring plaintiff to allege (1) a religious belief, (2) that they informed their employer of this belief, and (3) that they were disciplined for not complying with a conflicting employment requirement).

Moreover, the plaintiff cannot pursue a claim based on disparate treatment under Title VII, because it requires disparate treatment based on religious beliefs—which the plaintiff has not alleged with respect to COVID-19 testing. *See Barnett*, 125 F.4th at 471 (4th Cir. 2025) (noting that "[t]o prove a Title VII claim under a disparate treatment theory, a plaintiff must demonstrate that the employer treated [them] differently because of [their] religious *beliefs*") (citation and quotation marks omitted) (emphasis in original). Accordingly, Count II will be dismissed.

**C. GINA (Count III)**

The plaintiff alleges that GINA, which prohibits discrimination based on genetic information, bars the Secretary from discriminating against him based on his vaccination status or noncompliance with COVID-19 antigen testing requirements. ECF No. 21 ¶¶ 61–66. The Secretary argues that the plaintiff has no GINA claim because neither safety measure requires the disclosure of genetic information. ECF

---

*Quintero v. Garland*, 998 F.3d 612, 638 (4th Cir. 2021) (emphasis added). Here, the Court cannot identify any allegation that plausibly connects the plaintiff's faith to COVID-19 antigen testing.

No. 23 at 11–13. Because the Court concludes that GINA is not relevant to the policy at issue here, Count III must be dismissed.

Under GINA, it is unlawful for an employer to "discriminate against any employee . . . because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). "Genetic information" is defined as (1) an employee's genetic tests; (2) the genetic tests of the employee's family members; (3) the manifestation of a disease or disorder of the employee's family members; (4) an employee's request for, or receipt of, genetic services, or the participation in clinical research that includes genetic services by the employee or the employee's family member; and (5) the genetic information of a fetus. 42 U.S.C. § 2000ff(4)(A); 29 C.F.R § 1635.3(c). The plaintiff alleges that the Secretary, by mandating either vaccination or antigen testing, "required genetic information unlawfully[] and used it in employment decisions outside the narrow exceptions allowed by GINA." ECF No. 21 at 30.

However, multiple courts have concluded that GINA does not prohibit an employer from requiring COVID-19 vaccination or testing, nor does it prohibit inquiring about an employee's vaccination status. *See Russo v. Patchogue-Medford Sch. Dist.*, No. 22-cv-1569, 2024 WL 149131, at *6 (E.D.N.Y. Jan 12, 2024) (collecting cases). The plaintiff cites no legal authority to the contrary but asks the Court to depart from the case law because scientific studies show that the "mRNA vaccines are . . . gene therapy-based products that involve transcription into DNA[,]" ECF No.

26 at 14, and that COVID-19 vaccines "are informed by gene therapy and involve the interpretation and assessment of genetic services," ECF No. 21 ¶ 66.

The Court is not persuaded. The plaintiff did not receive the COVID-19 vaccine, and he refused to submit to antigen testing. ECF No. 21 ¶¶ 21, 26. So even assuming that participating in either safety measure *could* divulge his genetic information, the plaintiff does not allege that actually happened. At most, the plaintiff alleges that he reported his vaccination status to the Secretary, who classified him accordingly. *Id.* ¶ 66. But declaring one's vaccination status does not divulge "information about [an] individual's genetic tests" or any other information GINA protects. 42 U.S.C. § 2000ff(4).

### D. Hostile Work Environment Under Title VII

The allegations in the third amended complaint fall well short of establishing the plaintiff's hostile work environment claims, so Counts IV through VII also fail.

#### *i. Reprisal (Count IV) and Retaliation (Count V)*

The plaintiff alleges that he was subject to a retaliatory hostile work environment when, as a result of requesting a religious accommodation to avoid the Navy's COVID-19 vaccination or antigen testing requirements, he was subjected to "adverse and unlawful practices" designed to "intimidate [him] and make [his] status of 'unvaccinated' as awkward, belittling, and uncomfortable as possible." ECF No. 21

¶¶ 73–76 (quotation marks omitted). The plaintiff also alleges that he was subject to reprisal after he opposed the Navy's COVID-19 policies. *See id.* ¶¶ 67–72.

The Court will consider the plaintiff's reprisal and retaliation claims together: At their core, both allege that the plaintiff suffered adverse consequences because he engaged in activity protected under Title VII. ECF No. 21 ¶¶ 67–76. While the plaintiff plausibly alleges protected activity—both participatory and oppositional—he fails to demonstrate that he experienced a retaliatory hostile work environment because of that activity.

Title VII prohibits an employer from discriminating against an employee who (1) "has opposed any practice made an unlawful employment practice by [Title VII]" (opposition clause), or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (participation clause). 42 U.S.C. § 2000e-3(a).

To allege retaliation, a plaintiff must show that (1) they engaged in a protected activity, (2) their employer took a materially adverse action against them, and (3) those two actions are causally connected. *See Burlington N. & Santa Fe Fry. Co. v. White*, 548 U.S. 53, 61–68 (2006). A plaintiff's belief that a practice is unlawful—and thus, their decision to oppose it—must be "objectively reasonable" to warrant protection under Title VII. *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 411 (4th Cir. 2022) (citation omitted).

The plaintiff plausibly alleged that he was engaged in protected activity, at least at this stage of litigation. Seeking a religious accommodation, as the plaintiff

did, may qualify as protected participation. ECF No. 21 ¶ 74; *see, e.g.*, *Creusere v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 88 Fed. App'x 813, 821 (6th Cir. 2003) (unpublished) (plaintiff was "clearly engaged in a protected activity by requesting religious accommodation"); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) (in statutorily similar ADA context, requesting an accommodation constitutes protected activity). So can opposing what the plaintiff reasonably believed was an unlawful employment practice. *See, e.g.*, ECF No. 21 ¶ 2 (plaintiff opposed what he reasonably thought was an unlawful mandate).[7]

But the plaintiff fails to allege any "materially adverse" consequences because of this protected activity that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (2006) (citation and quotation marks omitted); *see also Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022) (while a plaintiff need not show a "tangible injury," they must allege "a retaliatory hostile work environment . . . so severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination."). "[O]nly significant harms" can produce actionable claims for retaliation, *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019), and an employee's decision to report or oppose unlawful behavior "cannot

[7] The plaintiff also alleges that he engaged in legally protected activity by filing with the EEOC on March 25, 2022. *See* ECF No. 21 ¶¶ 41, 74. The plaintiff is correct that filing an EEOC complaint can count as protected activity. *See Johnson v. City of Baltimore*, 163 F.4th 808, 819 (4th Cir. 2026). But most of the retaliatory conduct he alleges occurred *before* he filed his EEOC complaint, meaning that it could not have been taken because of the EEOC filing.

immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N.*, 548 U.S. at 68.

Here, the plaintiff alleges that because of his engagement in protected activity, the Secretary requested that other employees take on greater responsibility, apparently to the plaintiff's detriment, ECF No. 21 ¶ 71; tried to "intimidate" the plaintiff and make his unvaccinated status "as awkward, belittling, and uncomfortable as possible," *id.* ¶ 75; changed his supervisor while other employees were unaffected, *id.* ¶¶ 18–19, 75; and caused the plaintiff to experience "direct[] or passive aggressive[]" comments from coworkers and supervisors regarding his vaccination status, *id.* ¶ 47. While frustrating, these slights do not amount to significant harms that would dissuade a reasonable worker from complaining of alleged discrimination or retaliation. In fact, the plaintiff concedes that after being reprimanded for opposing vaccine requirements at work, he would still "gladly wear [the] epithet" of being called unprofessional if it meant he could continue vocally opposing the executive order and the Navy's COVID-19 policy. *Id.* ¶ 2. By the plaintiff's own admission, any allegedly retaliatory conduct he experienced did not discourage him from continuing to oppose what he saw as unlawful conduct, meaning it was not "materially adverse" to him—and he does not plausibly allege that the Navy's conduct was materially adverse to some other reasonable person. *Burlington N.*, 548 U.S. at 68. Nor do teleworking, comments from coworkers and supervisors, or

feelings of discomfort qualify as "significant harms" actionable under Title VII. *Evans*, 936 F.3d at 195.

Because the plaintiff fails to sufficiently allege retaliatory conduct, Counts IV and V for a retaliatory hostile work environment and a hostile work environment based on reprisal will be dismissed.

#### ***ii. Disability Discrimination (Count VI)***

The plaintiff also endeavors to bring a hostile work environment claim based on disability discrimination under Title VII. ECF No. 21 ¶¶ 77–81. However, Title VII does not cover disability discrimination. *See* 42 U.S.C. § 2000e-16(a). Thus, the plaintiff seeks leave to amend his complaint through briefing to allege a hostile work environment claim under the Rehabilitation Act. *See* ECF No. 26 at 23. The Court will deny that request.

The plaintiff has already amended his complaint several times, and his attempt to amend his complaint through briefing here is improper.[8] *See S. Walk at Broadlands Homeowners Ass'n Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). More importantly, amendment would be futile: Even if the Court granted the plaintiff leave to bring his claim under the Rehabilitation Act, it still fails

[8] The Court also notes that the plaintiff's attempt to allege constructive discharge through briefing is improper. *See generally* ECF No. 26. Because the plaintiff "does not explain how this new allegation is somehow tethered" to his complaint, to the extent the plaintiff is requesting that the Court construe a new constructive discharge claim, it will decline to do so. ECF 27 at 2.

to state a claim for the reasons explained in Part III.A. Accordingly, the Court will dismiss Count VI.

***iii. Religious Discrimination (Count VII)***

The plaintiff also alleges a hostile work environment based on religious discrimination. ECF No. 21 ¶¶ 82–89. He claims that when the Secretary failed to accommodate his sincerely held religious beliefs, he was subject to "actions intended to single out the unvaccinated and make [him] the subject of scorn and embarrassment." *Id.* ¶ 86. The Secretary argues that any actions taken against the plaintiff were not because he belonged to any protected class, and that these actions were not sufficiently severe or pervasive to create a hostile work environment. ECF No. 23 at 17–20.

To succeed on a hostile work environment claim, a plaintiff must show (1) unwelcome conduct that is (2) based on the plaintiff's protected status and (3) "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment" that can be (4) imputed to the employer. *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (citation omitted).

The plaintiff plausibly alleges that the government's conduct was unwelcome. But the second element of a hostile work environment claim requires the plaintiff to allege that his "protected characteristic under Title VII"—in this case, his religion—"was *the but[-]for cause* of the alleged harassment." *Laurent*-Workman, 54 F.4th at 210 (quotation marks omitted and emphasis added). The plaintiff makes the conclusory allegation that he experienced a hostile work environment because of his

religious beliefs, *see* ECF No. 21 ¶ 87, and he asserts that he is a Catholic, *id.* ¶ 3. But the plaintiff fails to plausibly allege that any actions taken by his employer were *because of* his religious beliefs, as opposed to his decision not to receive the vaccine or be tested for the COVID-19 antigen. "Harassment on the basis of a decision not to be vaccinated is not based on the plaintiff's religion such that it merits Title VII protection." *Chambers v. Sheppard Pratt Health Sys.*, No. 1:24-cv-2316, 2025 WL 1237358, at *6 (D. Md. Apr. 29, 2025) (collecting district court cases distinguishing between alleged harassment based on vaccine status and religion) (quotation marks omitted).[9]

The plaintiff also fails to allege that the harassment he experienced "would reasonably be perceived, and is perceived, as hostile or abusive." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (citation omitted); *see also Laurent-Workman*, 54 F.4th at 217 (requiring alleged mistreatment to be "so severe or pervasive that it affects the terms, conditions, or privileges" of employment) (citation and quotation marks omitted). This standard is a "high bar" that considers whether conditions were physically threatening or humiliating, psychologically damaging, or unreasonably disruptive to an employee's work performance. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Here, the plaintiff describes his employer's COVID-19 safety measures as being designed to make his

---

[9] Additionally, as discussed in Part III.B.ii, the plaintiff does not sufficiently allege that his opposition to COVID-19 *testing* was the result of his sincerely held religious beliefs. Therefore, he may not plausibly claim that "[b]ut for [his] *religious beliefs*, discriminatory conduct would not have affected him." ECF No. 21 ¶ 87 (emphasis added).

unvaccinated status feel "awkward, belittling, and uncomfortable[,]" ECF No. 21 ¶ 75, and "the subject of scorn and embarrassment," *id.* ¶ 87. But mere "bruised or wounded feelings" are not always actionable under Title VII, *Sunbelt*, 521 F.3d at 315, and the plaintiff has not shown how the conditions he experienced—such as being asked to telework—were any more unreasonably disruptive to him than they were to other employees during the COVID-19 pandemic. Accordingly, the Court will dismiss Count VII.

### D. *Bivens* (Count VIII)

Suing the Secretary in his individual capacity under *Bivens*, the plaintiff alleges violations of his Fifth Amendment rights. ECF No. 21 ¶¶ 90–92. The Secretary argues that even if the Court construes the plaintiff's claim as being properly pleaded against him in his individual capacity,[10] the plaintiff wrongly sued John Phelan because he did not serve as Secretary during the events underlying this litigation. ECF No. 23 at 21–22. Accordingly, the plaintiff requests leave to amend his complaint to name former Secretary Carlos Del Toro, who served as Secretary during the events at issue. *See* ECF No. 26 at 25.

Here again, amendment would be futile. *See Brainchild Surgical Devices, LLC v. CPA Global Ltd.*, 144 F.4th 238, 257 n.14 (4th Cir. 2025) (citation omitted). The

---

[10] It appears to the Court that the plaintiff is essentially bringing a claim against the Secretary in his official capacity because the Secretary enforced the Navy's COVID-19 policy. *See* ECF No. 23 at 21. Even though "a Bivens action does not lie against either agencies or officials in their official capacity," the Court will construe the plaintiff's claim in its most favorable light and assume it was intended to be brought against the Secretary in his individual capacity. *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (emphasis omitted).

Court concludes that, even if brought against the proper defendant, the plaintiff's *Bivens* claim is time-barred and, alternatively, does not state a claim for relief.

*Bivens* claims adopt the statute of limitations from the forum state's personal injury statute. *Reinbold v. Evers*, 187 F.3d 348, 359 n.10 (4th Cir. 1999). In Virginia, that statute of limitations is two years. Va. Code § 8.01-243(A); *see also Sebolt v. Pindelski*, No. 20-6867, 2022 WL 2828274, at *1 (4th Cir. July 20, 2022) (unpublished). So, to be timely, the plaintiff's *Bivens* claim must have accrued no more than two years before he filed his first complaint on November 22, 2024—that is, no earlier than November 22, 2022.

As a federal cause of action, a *Bivens* claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 604 (4th Cir. 2002). The "full extent" of the plaintiff's injury need not be apparent for a claim to accrue, *Wallace v. Kato*, 549 U.S. 384, 391 (2007), so long as the plaintiff "know[s] that he has been hurt and who inflicted the injury." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

The plaintiff argues that his Bivens claim accrued when he was constructively discharged from his position on April 14, 2023. *See* ECF No. 26 at 25. But the third amended complaint alleges that the Secretary acted against the plaintiff much earlier, including by classifying him based on his vaccination status starting November 29, 2021, ECF No. 21 ¶ 21; barring the plaintiff from entering his regular place of work on December 8, 2021, *id.* ¶ 27; and asking the plaintiff to temporarily

surrender his in-person workspace on January 11, 2022, *id.* ¶ 28. The plaintiff refers to these actions—among others—as the basis of his claims. *Id.* ¶¶ 1–51. That suggests the plaintiff understood these events to provide "sufficient facts about the harm done to him" and that he was aware of who inflicted that harm. *Nasim*, 64 F.3d at 955. Because these actions took place outside the two-year statute of limitations applicable here, the plaintiff's *Bivens* claim, even if amended, is time-barred. Accordingly, Count VIII will be dismissed.[11]

## IV. CONCLUSION

The Secretary's motion to dismiss (ECF No. 22) is **GRANTED**, and this action is **DISMISSED**.

The plaintiff may appeal this Opinion and Order by forwarding a written notice of appeal to the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive the written notice within 60 days from the date of the entry of this Opinion and Order. If the plaintiff wishes to proceed *in forma pauperis* on appeal, he must submit an application to proceed *in forma pauperis* to the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510.

[11] Additionally, even if the plaintiff's *Bivens* claim was not time-barred, the plaintiff is endeavoring to create a *Bivens* remedy in a new context. *See* ECF No. 23 at 24–25. Expanding the *Bivens* remedy is a "disfavored judicial activity" that the Court does not see fit to engage in here and provides an independent basis to conclude that dismissal of Count VIII is warranted. *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (citation and quotation marks omitted).

The Clerk is **DIRECTED** to please send a copy of this Opinion and Order to the plaintiff.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
September 24, 2026